UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>QIYAO YUAN, )<br>)<br>Defendant. )<br>_____) | Criminal No.: 06-0104-01 (ESH) |

DEFENDANT'S SENTENCING MEMORANDUM

Comes now the defendant, Qiyao Yuan, by and through counsel, G. Allen Dale, and respectfully submits the following memorandum in aid of sentencing. In support thereof the defendant respectfully states:

I.      BACKGROUND

During the middle of 2005, the Metropolitan Police Department and FBI conducted a sting operation and purchased motion picture DVD's which were determined to be counterfeit. These purchases were made from Mr. Yuan and his two co-defendants, employees of his, Cecilia Rodriguez and Ping Chen. On November 10, 2005, a search warrant was executed upon Mr. Yuan's business, YY Enterprises, Inc., and Mr. Yuan was arrested contemporaneous with the search. For some reason Mr. Yuan did not make his initial appearance until November 14, 2005, at which time he was released on personal recognizance, a status in which he remains.

Mr. Yuan expressed his desire early on to cooperate with the government and to dispose of his case short of a trial. Accordingly, there were numerous waivers of speedy trial until the parties reached a resolution which resulted in the filing of a one count information on April 26,

2006, charging Mr. Yuan with conspiracy to commit copyright infringement in violation of 18 U.S.C., §§371 and 2319.

On May 25, 2006, Mr. Yuan appeared before Magistrate Judge Kay where he pled guilty to the one count information, pursuant to the terms of a written plea agreement which had previously been lodged with the Court. The matter was continued until September 6, 2006, for sentencing before this Court.

## II.   PRE-SENTENCE REPORT

Mr. Yuan and counsel have reviewed the pre-sentence report prepared by US Probation Officer Renee Moses-Gregory. As we acknowledge in the receipt and acknowledgement of pre-sentence investigation report, we find that there are no material factual inaccuracies contained in the report. Further, we find Ms. Moses-Gregory's report to be fair and balanced. She portrays this 44 year old first offender as the product of an intact family in Sichuan, China, where both his mother and father are farmers. Ms. Moses-Gregory accurately reports that Mr. Yuan has been twice married and divorced, is a permanent resident, having migrated to the United States in 1987, to further his education. After obtaining degrees from the University of Iowa and the University of Missouri[1], Mr. Yuan moved to the Washington, DC area where he has been self employed as the owner of several businesses.

Ms. Moses-Gregory also acknowledges Mr. Yuan's remorse for his involvement in the instant offense.

## III.   MR. YUAN'S BACKGROUND

The pre-sentence report provides an overview of Mr. Yuan's background. Mr. Yuan was born in 1962 in Sichuan, China. He, along with his younger brother, assisted with the family in

---

[1] The pre-sentence report indicates that the University of Missouri has no record of Mr. Yuan. We have attached as Exhibit 1 a copy of Mr. Yuan's academic transcript showing his attendance and Ph.D. thesis.

2

their farming business. Like many in China, the Yuan family was a lower class family living off the land. Mr. Yuan's brother still resides with the family in China, but Qiyao was encouraged to leave with his wife and come to the United States to further his education. Mr. Yuan had graduated high school and had received a Bachelor of Arts degree in Economic Theory from Sichuan University but had found that very little could be done with this education as long as he remained in China.

Mr. Yuan and his first wife moved to the United States in 1987, first living in Iowa where Mr. Yuan received a Master of Arts degree in Economics from the University of Iowa. Mr. Yuan and his first wife divorced and he moved to Missouri where he attended the University of Missouri, obtaining a Ph.D. in Agricultural Economics.

Mr. Yuan married again but that marriage ended in divorce because his wife remained in China while he lived in the United States.

After obtaining his Ph.D. from the University of Missouri Mr. Yuan remained in the state until 1999, holding several positions with various governmental agencies, such as the Missouri Department of Labor, where he was an economic/data analyst.

In 1999 Mr. Yuan decided to open his own business. From 1999 to the present he has been self employed with YY Enterprises and in another business relationship with the co-owner of a business called Y mart in Riverdale, Maryland. These businesses are along the lines of a typical dollar store. The owner buys in great volume at very low prices and resells, again hopefully in great volume with very little markup, hopeful that the volume itself will sustain a living. The businesses usually buy and sell almost anything available on the market from socks to underwear, from coloring books to DVDs. This is precisely how Mr. Yuan became involved in the instant offense.

More recently, and therefore not included in the pre-sentence report, Mr. Yuan has been meeting with government officials in the State of Maryland to assist in economic trade with China (See Exhibit 2) and in developing new alternate sources of energy, including two projects in which Mr. Yuan is heavily involved -- solar energy for business consumption and new lightweight housing structures providing far better insulation than what is on the market today. (See Exhibit 3).

Another item of Mr. Yuan's background, not presented in the pre-sentence report, is Mr. Yuan's assistance in helping others less fortunate than himself.  In the cold of winter Mr. Yuan would often hand out surplus socks from his business to homeless people on the streets of Washington, D.C., (at any given time Mr. Yuan may have an inventory of tens of thousands of pairs of socks).  Mr. Yuan also invested in and sold, at almost no profit, push carts which the elderly/working poor need to transport groceries and other items from local stores to their homes or apartments.  The DVD's themselves, were sold almost at cost to Mr. Yuan and, with the exception of the undercover sting, were sold in small quantities on the streets to individuals who could not afford to purchase the real version of the movie.

In short, Mr. Yuan's background has been one of a person born to poverty who has worked hard and studied hard and tried to make something of himself.  Because of his own poverty as a youth he has always remembered to help others and continues to this very day to help those in need.

## IV.     ATTEMPTS AT COOPERATION

Another aspect of this case not presented to the Court in the pre-sentence report is Mr. Yuan's attempts at cooperation.  As we indicated early on, Mr. Yuan, immediately after his arrest, agreed to cooperate with the government.  It was his cooperation and his insistence that

4

convinced the two co-defendants to plead guilty and accept responsibility for their actions. Because they were his employees, Mr. Yuan was always willing to accept responsibility for his actions and to plead guilty to a greater charge, which he did.

Additionally, Mr. Yuan provided information about other individuals selling copies of counterfeit DVD's, including giving descriptions of the individuals and the automobiles which they drove. As of this writing we are unaware of whether the government intends to file a departure motion pursuant to USSG §5K1.1. However, since the guidelines are no longer mandatory, the filing of such a motion is not necessary for the court to sentence Mr. Yuan outside the advisory guideline range. Also, whether the government files a departure motion or not, we thought it important for the court to know of Mr. Yuan's attempts at cooperation, his assistance in obtaining the pleas of the other two co-defendants and his willingness to provide information to the government regarding illegal activities of others.

      I.     V.  THE OFFENSE CONDUCT

The pre-sentence report provides elaborate detail of the offense conduct, consuming almost six pages of the report. Further, we agree that the conduct as presented in the pre-sentence report is correct. Therefore, we need not provide more detail. We take this opportunity to explain certain aspects of the offense conduct. We certainly do not intend to minimize the conduct.

As we indicated earlier, Mr. Yuan runs his own business and he buys almost anything and everything which can be bought in bulk at a low price. These items are stored in large warehouse type settings and much of his business is the resale of these bulk items to other vendors. Counsel has visited Mr. Yuan's business locations with Mr. Yuan and with FBI agents. On any given occasion one could find almost any small ticket item at Mr. Yuan's warehouse.

And one could find literally thousands of any given item such as socks, notebooks, pens, pencils, pocketbooks, tee shirts and other various items of clothing. It is inevitable in this type business that some of the items purchased by Mr. Yuan and then resold by him would be what in the trade ore known as "knockoffs."

This is not to say that Mr. Yuan should not have paid closer attention and, certainly once it was brought to his attention that the DVD's, for example, were in violation of copyright infringement laws, he should have ceased selling them. We believe it important to note that the sale of the DVD's was a very, very, minimal part of Mr. Yuan's overall business and that what he was charging for the DVD's makes it clear that this was not a money making endeavor. For example, the October 14, 2005 purchase of 90 DVD's was made for $260.00. This is less than $2.90 per DVD, meaning that the cost of the DVD and the purchase of the DVD by Mr. Yuan from another distributor meant that Mr. Yuan was making pennies on each sale.

Again, we don't seek to minimize Mr. Yuan's criminal activity but simply wish to put it in proper perspective.

## VI.  CONCLUSION AND RECOMMENDATION

18 U.S.C. § 3553(a) provides guidance as to the factors to be considered in imposing a sentence. These are, obviously, even more importantly since <u>Booker.</u> [2] 18 U.S.C. § 3553 provides

> (a)  Factors to be considered in imposing a sentence.--- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this sub-section.  The court, in determining the particular sentence to be imposed, shall consider --
>
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[2] <u>United States</u> v. <u>Booker,</u> 543 U.S. 220 (2005)

6

    (2)  the need for the sentence imposed --

      (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)  to afford adequate deterrence to criminal conduct;

      (C)  to protect the public from further crimes of the the defendant; and

      (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)  the kinds of sentences available;

    (4)  the kinds of sentence and the sentencing range established for --

      (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --

  Considering the nature and circumstances of the offense and the history and characteristics of the defendant, it is clear, we respectfully submit, that this individual does not need incarceration.  While causing a loss to anyone is indeed serious, the amount of loss presented by the government does not equate to the gain by this defendant.  Rather the loss is to the movie industry, and only if indeed all the individuals who bought the DVD's from Mr. Yuan had decided to view the movie in the theater or buy the DVD through normal distributors, something which is highly unlikely to have happened.  Mr. Yuan was not robbing people at gunpoint or taking money from individuals.  Therefore, we would submit that there is less need to incarcerate, and certainly it is not needed to protect society.  And compared with the history and characteristics of Mr. Yuan, the crime pales in comparison.  We have outlined Mr. Yuan's

7

background earlier and need not repeat it. It speaks for itself in many ways. It is an exemplary background.

As to any need for a sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment, a lengthy term of probation with community service and any other punitive condition the Court deems appropriate certainly can address each of these issues not only adequately but more adequately than simply warehousing Mr. Yuan.

As for deterrence, we respectfully submit that Mr. Yuan need not be incarcerated and that any sentence would provide adequate deterrence to this individual. He has quite simply learned his lesson. As to deterrence to the public as a whole, the sentence we have proposed, when one looks at the background of this individual and the offense charged, would be more than enough of a "statement to the community." This man now has a felony conviction which carries with it many dire consequences. A lengthy term of probation and community service, fines and other conditions would certainly deter someone from committing a crime with as little gain as is involved in the crime Mr. Yuan committed.

The public need not be concerned about protection from this defendant and this defendant does not need educational or vocational training or other correctional treatment which could not be addressed by a period of probation.

The guidelines themselves provide for a low sentencing range, and given the circumstances in this case, sentencing slightly outside that range is reasonable.

The court has before it a 44 year old first offender who has expressed his remorse for his offense, entered into an early plea and attempted to cooperate with the government. His urging caused two co-defendants to plead guilty, saving the government the necessity of a trial. He has

been a hard worker, giving much back to the community and continues to be admired within his community and indeed by government officials in the State of Maryland. This conviction may lead to his deportation regardless of what sentence the court imposes. But if the court imposes a period of incarceration we are informed by immigration attorneys that the likelihood is that Mr. Yuan will indeed be deported.[3]

Wherefore, we respectfully pray that this court sentence Mr. Yuan to a period of probation, impose a fine within the guidelines, order 200 hours of community service and any other conditions of probation this court deems appropriate.[4]

Respectfully submitted,

_____/s/_____
G. ALLEN DALE
Bar No. 954537
601 Pennsylvania Avenue, N.W.
North Building - 9th Floor
Washington, D.C. 20004
(202) 638-2900

---

[3] Many in our society believe that a person who migrates to this country and then commits a crime should be deported. We respectfully submit that making one mistake, especially a non-violent, non-drug related mistake should be weighed against the benefit any immigrant has provided our country and in a case such as this the good outweighs the bad and that this individual should be allowed to avoid deportation if possible.

[4] We also submit that the court should suspend mandatory drug testing since reliable sentencing information indicates a low risk of substance abuse. 18 U.S.C. § 3563(a)(5) and 3583(d).

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I have electronically served a copy of the foregoing upon AUSA John Carlin and hand delivered to US Probation Officer Renee Moses-Gregory, 3rd & Constitution Avenue, N.W., Washington, D.C. 20001, on this 24th day of August, 20006.


                                                    _____/s/_____
                                                    G. ALLEN DALE